NORRIS, Circuit Judge:
The question presented by this appeal is whether McClendon, the trustee in Bankruptcy of Wadsworth Building Components (Wadsworth), may under § 547 of the Bankruptcy Code avoid a payment made by Wadsworth to one of its creditors, Cal-Wood Door (Cal-Wood). We hold that the payment made by Wadsworth to Cal-Wood does not fit within any of the exceptions to *123 § 547 and is therefore voidable as a preferential payment.
I
In October, 1979 Cal-Wood sold Wads-worth goods and materials worth $21,-691.45. Wadsworth paid for the goods by check in December. When Cal-Wood deposited the check, it was dishonored because of insufficient funds in Wadsworth’s account. Cal-Wood then refused to fill additional Wadsworth orders until the check was paid. Upon assurances from Wadsworth that the check would be paid, Cal-Wood shipped goods and materials worth $21,484.05 to Wadsworth on January 22 and 23, 1980. The check was redeposited and honored by Wadsworth’s bank on February 14, 1980. The goods delivered in January were never paid for, and Wadsworth filed for bankruptcy on April 14, 1980.
McClendon, Wadsworth’s trustee in bankruptcy, filed a complaint in the bankruptcy court seeking to recover the $21,691.45 payment as a preferential transfer voidable under § 547 of the bankruptcy code.[1] The bankruptcy court held that the payment was a preference and ordered it returned. The district court reversed and McClendon appeals. The two issues presented on appeal are (1) whether new value was given by Cal-Wood to Wadsworth pursuant to § 547(c)(4); and (2) whether there was a contemporaneous exchange for new value pursuant to § 547(c)(1).
II
As an initial matter, it would appear that Cal-Wood has no claim under § 547(c)(4). That section carves out the so-called new value exception to the trustee’s avoidance powers. It provides that, to foreclose the trustee’s avoidance power, new value must have been given after the transfer from the bankrupt to his creditor. Here, new value in the form of goods and materials (or credit for those goods and materials) was given on January 22 and 23. Yet the check that Cal-Wood received was not honored by the bank until February 14. Section 547 provides that if a transfer is in the form of a check and if the check is not honored within ten days from execution (this check was executed in December), then the transfer is made when the check is honored by the drawee bank. 11 U.S.C. § 547(e)(2)(A) and (B) (Supp. V 1981); Matter of Duffy, 3 B.R. 263 (Bkrtcy.S.D.N.Y. 1980). Thus new value was given before the transfer and § 547(c)(4), by its terms, does not apply. The trustee may thus avoid the payment.
Cal-Wood suggests, however, that the judicially-created “net result rule” should be applied to this case to foreclose the trustee’s avoidance power. The net result rule was a judicial creation under the 1898 Bankruptcy Act. It provided that if there was a running account of credit and payment between debtor and creditor, all transactions over the preference period were examined. If more credits than payments occurred, even though individual payments during the period might comprise a preference, there was held to have been no preference. As one court stated the rule, “the test in determining the absence or existence of a preference is whether or *124 not the entire course of dealings on the open account, resulting from [the] revolving credit, resulted in the enrichment of the insolvent estate.” Federal Int’l. Banking Co. v. Childs, 54 F.2d 478 (2d Cir.1931). Bankruptcy courts have disagreed as to whether the net result rule applies under the new bankruptcy code as it applied under the old act. See In re Fulghum Construction Corp., D.C., 14 B.R. 293 (1981) (rule does apply); Matter of Bishop, 17 B.R. 180 (Bkrtcy.N.D.Ga.1982) (rule does not apply); In re Thomas W. Garland, 19 B.R. 920, 926 (Bkrtcy.E.D.Mo.1982) (same). While there are reasonable arguments about whether the net result rule should be applied under the new Code, it is clear that Congress did not intend the rule to apply. We are bound by that Congressional intent.
In deciding whether rules judicially created under the 1898 Act should be applied under the 1978 Bankruptcy Code, we examine the legislative history of the Code to determine whether Congress intended the rule in question to continue to apply. It is clear that Congress intended § 547(c)(4) to be the exclusive net result rule under the Code. The House Report to the Code states that:
The fourth exception (to § 547) codifies the net result rule in Section 60c of current law. If the creditor and the debtor have more than one exchange during the 90-day period, the exchanges are netted out according to the formula in paragraph (4). Any new value that the creditor advances must be unsecured in order for it to qualify under this exception.
H.R.Rep. No. 95-595, 95th Cong., 1st Sess. 374 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6330. The second sentence of the passage seems to indicate clearly that § (c)(4) is intended to be the exclusive net result rule under the Code. Further support for this conclusion is derived from the portion of the Bankruptcy Commission Report dealing with the net result rule. The Commission stated that
The Commission’s recommendation does not, however, go as far as the ‘net result rule’ established by some early cases. A true ‘net result’ rule would total all payments and all advances and offset the one against the other. This is not allowed under the Commission’s recommendation, since the advance to be offset must be subsequent to the preference.
Report of the Commission on the Bankruptcy Laws of the United States, H.Doc. No. 93-137, 93rd Cong., 1st Sess., Pt. 1, 210-211 (1973).
Since Cal-Wood’s extension of new value to Wadsworth does not meet the requirements of § (c)(4), and since we hold that § (c)(4) is the exclusive net result rule under the code, Cal-Wood cannot prevent the trustee from avoiding the payment as a preference.
Ill
Cal-Wood argues next that its extension of new value and receipt of payment from Wadsworth was a “contemporaneous exchange for new value” within the meaning of § 547(c)(1). It contends that “the promise and assurance of the Debtor of payment of the dishonored check was the consideration for the extension of new credit.”
The bankruptcy court held that the check was not new consideration, but instead only the payment of an existing obligation. It therefore held that no new value was given for the check. This finding is not clearly erroneous. The critical inquiry in determining whether there has been a contemporaneous exchange for new value is whether the parties intended such an exchange. 11 U.S.C. § 547(c)(1) (Supp. IV 1978); 4 Collier on Bankruptcy, para. 547.-37[2] (15th ed. 1979). Here, the stipulation of facts states that the debtor was required to pay past debts before it would receive further credit. Value was given only for a future promise to pay. The check, therefore, is not exempted from treatment as a preference by § (c)(1).
The payment from Wadsworth to Cal-Wood is voidable as a preference. The judgment of the district court is, therefore,
REVERSED.

. 11 U.S.C. § 547 provides, in relevant part, that:
(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—
(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
(3) made while the debtor was insolvent;
(4) made—
(A) on or within 90 days before the date of the filing of the petition;
* * * * * *
(c) The trustee may not avoid under this section a transfer
* * * * * *
(4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—
(A) not secured by an otherwise unavoidable security interest; and
(B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor.
11 U.S.C. § 547 (Supp. IV 1978).