**In re COLUMBIA PACKING COMPANY, Debtor.**

**COLUMBIA PACKING COMPANY, Plaintiff,**

v.

**ALLIED CONTAINER CORP., American Can Company, Boston Gas Company, Eagle Electric Supply, East Coast Tying Service, General Spice, Inc., Standard Uniform Services, Teepak, Inc., Defendants.**

**Bankruptcy No. 83–00260–HL.**
**Adv. Nos. 84–0062, 84–0063, 84–0072, 84–0077, 84–0078, 84–0081, 84–0115 and 84–0116.**

United States Bankruptcy Court, D. Massachusetts.

June 14, 1984.

Richard E. Mikels, Peabody & Brown, Boston, Mass., for debtor.

MEMORANDA ON APPLICATION OF 11 U.S.C. § 547(c)(4)

HAROLD LAVIEN, Bankruptcy Judge.

On April 6, 1984, the Court confirmed a plan of reorganization in the Columbia Packing Company proceedings. In short, the plan provided for the distribution of all assets to creditors, a proverbial liquidating Chapter 11. Substantially all of the debtor's assets were sold by a notice of intended sale on September 14, 1983. Pursuant to the plan of reorganization, the debtor was to retain the obligation to object to proofs of claim, initiate and pursue preferences, among other duties.

In March, 1984, the debtor commenced seventy-three (73) preference actions. In response to many of these actions, several defendants raised the defense provided by 11 U.S.C. § 547(c)(4). This section reduces preference liability to the extent that a recipient of a preference provided new credit to the debtor which remained unpaid

and unsecured on the date the petition seeking relief under the Bankruptcy Code was filed. Counsel to the debtor, Richard Mikels, has taken the position that, to the extent that preference liability is reduced by the § 547(c)(4) defense, the claim of the defendant must be similarly reduced. Utilizing § 60c of the 1898 Act, 11 U.S.C. § 553 (setoffs) and preference decisions in which the terms "setoffs" and "netted out" appear, he argues pre-petition liability owed by a debtor cannot be setoff against the post-petition preference liability owed to a debtor or trustee. Section 547(c)(4), according to this argument, allows a "setoff" where it would not otherwise be available. Accordingly, he concludes that "once used as an offset, the invoices cannot also establish an additional claim." Thus, the debtor would argue that in the event of a $10,000 claim with what would be a $3,000 preference but for a § 547(c)(4) defense, because of $3,000 in new goods, supplied unsecured, the allowable claim should only be $7,000.

Mr. Mikel's supervision of the liquidation of Columbia Packing Company, as debtor's counsel, has lived up to his reputation—he is efficient, imaginative, and resourceful.

In the matter at hand, he is stretching the language of 11 U.S.C. § 547(c)(4) by digging his adversaries into a time warp through § 60c of the 1898 Act, using as his shovel the words "setoff" as they appear in a number of decisions, to channel his way to a non-sequitor. The result of this exercise is to find a light at the end of this semantic tunnel that is not the same destination of the cases to which he has referred. In fact, no decided case reads the sign posts quite the same as counsel. The preference cases cited by the debtor that make use of the term "setoff," do not seek to use the term as a word of art with the technical meaning of setoff as utilized in 11 U.S.C. § 553 of the Code.[1]

Still, it is hard to fault the attorney, who subtly tries to disarm us by honestly pointing to the different language of 11 U.S.C. § 547(c)(4) and § 60c of the Act, and the logical possibility of coming to another conclusion which he, then, discards. Specifically, the old Act expressly utilizes the phrase "setoff" while the present Code describes an entirely different approach. Under § 547(c)(4), there is nothing to setoff since there is simply *no preference* to the extent that new unsecured value is given.

**1.** *See, e.g., In re Fulghum Construction Corp.,* 706 F.2d 171 (6th Cir.1983) ("§ 547(c)(4) permits a netting procedure to be applied when the debtor and creditor are both recipients and initiators of transactions"); *In re Frigitemp Corp.,* 34 B.R. 1000 (S.D.N.Y.1983) ("new credit received after the preferential transfers can be netted off against them"); *Bernstein v. Home Life Insurance Co.,* 25 B.R. 321 (S.D.N.Y. 1982) ("the arguably preferential payment Home Life received for the September coverage was more than offset by the unpaid services performed by Home Life as a result of the policy's reinstatement"); *In re Gold Coast Seed Co.,* 30 B.R. 551 (Bankr.App. 9th Cir.1983) ("for the purposes of offsetting credit for new value under § 547(c)(4), we hold that the transfer occurred ..."); *In re Keydata Corp.,* 37 B.R. 324 (Bankr.D.Mass.1983) ("the value of the utility service provided to the debtor after the preference payment for earlier service may be offset against the preference payment, as long as the new value remains unpaid"); *In re Craig Oil Co.,* 31 B.R. 402 (Bankr.M.D.Ga.1983) ("Paragraph four [of Section 547(c)] allows a creditor a setoff only when new value is given after a transfer"); *In re Rustia,* 20 B.R. 131 (Bankr.S.D.N.Y. 1982) ("only preferential transfers made by the debtor before the new value was given may be netted out against the subsequent new value"); *In re Bishop,* 17 B.R. 180 (Bankr.N.D.Ga.1982) ("The extent to which the new value went unpaid is $16,812.64. To this extent the payment of September 27, 1979, if found preferential, may be offset"); *see also* Countryman, *Bankruptcy Preferences-Current Law and Proposed Changes,* 11 U.C.C.L.J. 95 (1978) ("even though a creditor has received a preference which is not excepted under this new [1978] bill, he may still offset any subsequent unsecured credit which he extended to the debtor"). For cases dealing with Section 60c, the debtor cites *Kaufman v. Tredway,* 195 U.S. 271, 25 S.Ct. 33, 49 L.Ed. 190 (1904) (one who, after receiving a preferential payment from the bankrupt, loans the bankrupt money in good faith without security, is entitled to have the loan amount set off from the amount recoverable by the trustee); *Robie v. Myers Equipment Co.,* 114 F.Supp. 177 (D.Minn. 1953) ("The credit, in order to entitle the creditor to set off, must be extended subsequent to the preferential transfer"); *In re Bauman,* 57 F.2d 569 (D.C.N.D.Cal.1932) ("Under section 60c only advances made after the receipt of the preference may be set off").

Moreover, the rationale of § 547(c)(4) is simple—the creditors have not been harmed, the estate has not been diminished, because new inventory has been supplied. In fact, such activity is to be encouraged as it allows the business a further chance to solve its problems and, possibly, avoid the need of filing. This benefit is circumscribed to prevent abuse by eliminating the net benefit rule [2] and limiting the exception to the newly provided goods, only. In reality, it puts the debtor on a C.O.D. basis. It is as if the creditor is being paid in advance of shipments, rather than being paid for antecedent debts.

To illustrate, assume a $10,000 debt and an $8,000 payment, more than 45 days after incurring the debt but less than 90 days before filing the petition. If we were to stop here, the creditor, instead of being owed $2,000, would have to remit $8,000 and file a claim for the original $10,000. However, assume that after the $8,000 payment but before the filing of the petition, the creditor ships, without payment or security, $5,000 in goods. Under § 547(c)(4), there is a $3,000 preference because the $5,000 has, in effect, been paid in advance for the new goods. When the $3,000 is returned, the original $10,000 is still unpaid and represents the creditor's claim, a result no different than that of the original illustration. However, if the Court were to accept Mr. Mikels' theory, the creditor would be penalized an additional $5,000 on his proof of claim, all for shipping an additional $5,000 in goods.

To further illustrate, assume that the new shipment in the above illustration had been $12,000 worth of goods rather than $5,000. The entire $8,000 payment would not be a preference and the creditor's claim would be the original $10,000 and $4,000 of the new shipment, or $14,000. Now, assume further that the creditor was paid an additional $4,000 after the last shipment. The creditor would not be able to "net out" the $4,000 but would have to relinquish the $4,000 as a preference (and have an additional claim of $4,000) because, by definition, no new goods were shipped as to which the equivalent advance payment could be applied, although total shipments of $22,000 equal total payments. Of course, this advance payment test is merely the equivalent of legal litmus paper; otherwise, the original debts would never be paid and statute of limitation problems, among others, could arise during the ninety-day preference period. This test, however, enables us to see why 11 U.S.C. § 547(c)(4) uses a non-setoff approach. The setoff approach advanced by the debtor, as noted in the second example, above, would have the creditor supply $15,000 of goods, get paid $8,000 and, although he returned $3,000 and kept only $5,000, he would have a claim for only $5,000. Obviously, not an equitable result.

The claims of the creditors are not to be diminished by more than any payments they are allowed to retain and for which they have not already given credit.

---

**2.** *In re Wadsworth Building Components, Inc.,*   711 F.2d 122, 8 C.B.C.2d 1166 (9th Cir.1983).