**In re AMERICAN INTERNATIONAL AIRWAYS, INC.: Jointly Administered with: American International Industries, Inc.—Bankruptcy No. 84–02411K, A.C. Travel Service, Inc.—Bankruptcy No. 84–03919K, American International Transport, Inc.—Bankruptcy No. 84–04050K, Debtor.**

**Harry P. BEGIER, Jr., Trustee for American International Airways, Inc. Plaintiff,**

**v.**

**AIRTECH SERVICES, INC. Defendant.**

**Bankruptcy No. 84–02379K.**
**Adv. No. 85–0445K.**

United States Bankruptcy Court, E.D. Pennsylvania.

Jan. 7, 1986.

Pace Reich, Philadelphia, Pa., for debtor.

Christopher J. White, McLean, Va., for defendant.

Harry P. Begier, Jr., Philadelphia, Pa., Trustee.

Edward J. DiDonato, Philadelphia, Pa., for trustee.

## OPINION

WILLIAM A. KING, Jr., Bankruptcy Judge.

This matter comes before the Court on the defendant's motion for summary judgment in a preference action brought by the Trustee. The defendant acknowledges receipt of four (4) payments from the debtor during the ninety (90) days preceding the filing of the bankruptcy. However, the defendant claims that these transfers are not avoidable by the Trustee because they fall within the exception to the Trustee's avoiding powers set forth at 11 U.S.C. § 547(c)(4). For the reasons stated herein, we find that summary judgment is not appropriate at this time. Therefore, we will deny the motion.

The material facts are not in dispute: American International Airways, Inc. ("debtor") filed a petition under Chapter 11 of the Bankruptcy Code ("Code") on July 19, 1984. The Court appointed a Trustee on September 19, 1984.

The defendant in this adversary proceeding is Airtech Services, Inc., a certified aircraft repair station, which performed maintenance service on the debtor's aircraft.

On or about June 22, 1984, the defendant received a check dated June 22, 1984 in the amount of $85,000.00 from the debtor. Subsequent to June 22, 1984, the defendant provided services to the debtor and invoiced the debtor as follows:

| Invoice No. | Amount |
|---|---|
| 6–176 | $ 74.55 |
| 6–145 | 50,482.05 |
| 6–207 | 56,169.86 |
| 6–246 | 57.04 |
| 7–071 | 14,219.20 |
| 7–088 | 41,297.93 |

The defendant was subsequently paid on each of these invoices, except that $26,585.35 was still owed on invoice no. 7–088 at the time of the filing of the petition.

The Trustee filed the above-captioned adversary proceeding against the defendant on May 24, 1985. In the complaint, the Trustee alleged that one transfer in the amount of $85,000.00 was made to the defendant within the statutorily prescribed preference period and was avoidable pursuant to 11 U.S.C. § 547(b). On September 18, 1985, the defendant filed the instant motion for summary judgment on the complaint, claiming entitlement to an affirmative defense under 11 U.S.C. § 547(c)(4). On September 20, 1985, the Trustee filed a motion for leave to amend the complaint to include three (3) additional transfers of $70,000.00 each, which were made to the defendant within the statutorily prescribed preference period, and were referred to in the defendant's motion for summary judgment and supporting documents. The Trustee's motion was granted on November 5, 1985, and the Trustee filed an amended complaint on November 13, 1985. Thus, the four (4) transfers which the Trustee seeks to recover on behalf of the estate total $295,000.00.

Since both parties agree that there are no material facts in dispute, this Court must determine whether the defendant is

entitled to summary judgment as a matter of law based on its assertion of an affirmative defense under § 547(c)(4).

Rule 56(c) of the Federal Rules of Civil Procedure sets forth the standard of review for a summary judgment motion. Rule 56(c) provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The United States Court of Appeals for the Third Circuit has characterized summary judgment as a drastic remedy and has stated that the courts are to resolve any doubts as to the existence of genuine issues of fact against the moving parties. *Hollinger v. Wagner Mining Equipment Co.*, 667 F.2d 402, 405 (3d Cir.1981), *citing Ness v. Marshall*, 660 F.2d 517 (3d Cir.1981). To be entitled to summary judgment, a party must demonstrate that there is no genuine issue as to any material fact. Any reasonable inferences from the facts must be resolved in favor of the party against whom the judgment is entered. *Peterson v. Lehigh Valley Dist. Council, Etc.*, 676 F.2d 81, 84 (3d Cir.1982); *Betz Laboratories, Inc. v. Hines*, 647 F.2d 402, 404 (3d Cir. 1981).

The exceptions to the Trustee's avoiding powers contained in 11 U.S.C. § 547(c) are affirmative defenses. The burden is on the creditor to prove each of the elements of the exception asserted by a preponderance of the evidence. 11 U.S.C. § 547(g); *Richter & Phillips Jewelers & Distributors, Inc. v. Dolly Toy Co. (In re Richter & Phillips Jewelers & Dist.)* 31 B.R. 512 (Bankr.S.D. Ohio 1983).

Section 547(c)(4) provides:

> (c) The trustee may not avoid under this section a transfer—
>
> (4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—
>
> (A) not secured by an otherwise unavoidable security interest; and
>
> (B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor. . . .

The § 547(c)(4) exception has been labeled the "subsequent advance rule" in contrast to the "net result rule", which was applicable to pre-Code cases.[1] The effect of the "net result rule" was to total all payments made by the debtor and all advances made by the creditor and offset the one against the other. *See McClendon v. Cal-Wood Door (In re Wadsworth Building Components, Inc.)*, 711 F.2d 122, 124 (9th Cir. 1983).

Under the "subsequent advance rule", the new value given is to be netted only against a previous preferential transfer, not against any subsequent transfers. *Leathers v. Prime Leather Finishes Co.*, 40 B.R. 248, 250 (D.Me.1984). Norton has stated the rule as follows: ". . . section 547(c)(4) . . . allows only the new value extended subsequent to the otherwise preferential transfer to be netted." 1985 Ann. Surv.Bankr.L.—(257). Section 547(c)(4) protects a transfer from preference attack only to the extent that a creditor thereafter replenishes the estate. *See Leathers*, 40 B.R. at 250. The purpose of § 547(c)(4) is to encourage trade creditors to continue dealing with troubled businesses. *Gold Coast Seed Co. v. Spokane Seed Co. (In re Gold Coast Seed Co.)*, 30 B.R. 551 (Bankr. 9th Cir.1983).

The defendant contends that the Trustee may not avoid the alleged preferential transfer of $85,000.00 because it extended new value to the debtor in the form of services *after* the $85,000.00 payment took place. The defendant points to the invoices which were drawn up after June 22, 1984

---

1. Several courts interpreting § 547(c)(4) have found that the "net result rule" has no applicability under the Code. *See e.g., Leathers v. Prime Leather Finishes Co.*, 40 B.R. 248 (D.Me. 1984); *Pettigrew v. Trust Company Bank (In re Bishop)*, 17 B.R. 180 (Bankr.N.D.Ga.1982).

as evidence of this new value. Thus, the defendant argues, the § 547(c)(4) exception is applicable here, and, under the holding of *Valley Candle Mfg. Co. v. Stonitsch (In re Isis Foods, Inc.),* 39 B.R. 645 (W.D.Mo. 1984), the entire amount of the alleged preferential transfer was offset by the new value extended, because the amount of the invoices exceeds $85,000.00.[2]

The Trustee contends that in order for the new value to offset the amount of the alleged preferential transfer, the new value must go unpaid. Here, the Trustee points out, the debtor paid for all of the services rendered after June 22, 1984, except for $26,585.35, which is still owing on invoice no. 7–088.

The defendant cites *Isis Foods* as precedent for its argument that subsequent new value need not go unpaid in order for the § 547(c)(4) exception to apply. In *Isis Foods,* the United States District Court for the Western District of Missouri did not limit the subsequent advance rule to unpaid invoices. The Court stated:

"... section 547(c)(4) does not contain any language that even suggests that the new value rule contained therein is somehow limited to unpaid invoices.... The dictum in the cases relied upon by the appellee to the effect that the new value must be 'unsecured' and go 'unpaid' is an inaccurate and confusing paraphrase of the clearly stated statutory exceptions."

39 B.R. at 653.

However, the overwhelming majority of courts hold directly opposite the holding in *Isis Foods,* that is, the new value must go unpaid in order for § 547(c)(4) to apply. *Pettigrew v. Trust Company Bank (In re Bishop),* 17 B.R. 180 (Bankr.N.D.Ga.1982); *Erman v. Armco, Inc., (In re Formed Tubes, Inc.),* 46 B.R. 645 (Bankr.E.D.Mich. 1985); *Bernstein v. RJL Leasing (In re White River Corp.),* 50 B.R. 403 (Bankr.D. Colo.1985); *Remes v. Yeomans (In re Quality Plastics, Inc.),* 41 B.R. 241 (Bankr. W.D.Mich.1984); *Columbia Packing Co. v. Allied Container Corp. (In re Columbia Packing Co.),* 44 B.R. 613 (Bankr.D.Mass. 1984); *Keydata Corp. v. Boston Edison Co. (In re Keydata Corp.),* 37 B.R. 324 (Bankr.D.Mass.1983); *Rovzar v. Prime Leather Finishes (In re Saco Local Development Corp.),* 30 B.R. 859 (Bankr.D.Me. 1983).

The Court in *Formed Tubes* explained why the new value must go unpaid:

The extension of new value in an amount equal to a preference "in effect returns the preference to the estate." 2 Norton, *Bankruptcy Law and Practice,* § ·32.20 (1981). Since the preference has in effect been returned, the estate has not been harmed. Section 547(c)(4) merely recognizes this reality.

[T]he rationale of § 547(c)(4) is simple—

the creditors have not been harmed, the estate has not been diminished, because new inventory has been supplied. In fact, such activity is to be encouraged as it allows the business a further chance to solve its problems and, possibly, avoid the need of filing.... In reality, it puts the debtor on a C.O.D. basis. It is as if the creditor is being paid in advance of shipments, rather than being paid for antecedent debts.

*In re Columbia Packing Co.,* 44 B.R. 613, 615 (Bankr.D.Mass.1984). However, if the creditor obtains a security interest to secure payment of the new value or is paid for the new value by the debtor, there is in effect no return of the preference and the section 547(c)(4) defense is not available to the creditor.

---

**2.** Although the defendant filed a reply brief to the Trustee's brief in opposition to the defendant's motion for summary judgment, the defendant does not address the three (3) additional transfers of $70,000.00 each, which the Trustee added in the amended complaint. The defendant does state, however, that the Trustee's filing of the motion to amend its complaint was brought in bad faith and in violation of the rules, and that two (2) of the alleged preferential payments (referred to as checks nos. 6253 and 6337) are not at issue because a clear § 547(c)(2) defense exists.

46 B.R. at 647.[3]

In summary, we hold as a matter of law that the defendant is not entitled to offset against the claimed preferential transfers any new value which was subsequently paid for by the debtor. It would appear that the most the defendant is entitled to offset under § 547(c)(4) is $26,585.33, the amount remaining unpaid on the invoices. Therefore, the defendant has not proven by a preponderance of the evidence that it is entitled to summary judgment on the complaint under § 547(c)(4).

There is an additional reason why this action is not ripe for summary judgment. The Trustee raises in his brief the issue of whether the services that are invoiced on invoice nos. 6–145 and 6–207 were performed by the defendant for the debtor *before* the $85,000.00 transfer took place, even though the invoices were clearly drawn up after such date. New value under § 547(c)(4) is considered rendered on the date that goods are provided or services performed and not on the date a creditor chooses to bill the debtor for those goods or services. *Remes v. Acme Carton Corp. (In re Fasano/Harriss Pie Co.)*, 43 B.R. 871, 879 (Bankr.W.D.Mich.1984); *Brooks Shoe Manufacturing Co., Inc. v. Metropolitan Edison Co. (In re Naudain, Inc.)*, 32 B.R. 871, 874 (Bankr.E.D.Pa.1983). Thus, it is clear that the defendant is not entitled to the new value defense under § 547(c)(4) for any goods and services which may have been performed prior to the date of the alleged preferential transfers, even if those goods and services are enumerated on invoices which were written up after the transfers. It is not clear from the facts presented when the goods and services invoiced on invoice nos. 6145 and 6207 were performed.

For the reasons stated, we find that the defendant is not entitled to judgment as a matter of law. Therefore, we will deny the defendant's motion for summary judgment.

**3.** Also, in *Formed Tubes,* footnote 3 on page 647, the Court states that the parties agreed that the court in *Isis Foods* was in error in holding that the new value rule of section 547(c)(4) is not limited to new value that is unpaid.