In re PNP HOLDINGS CORPORATION and Pay 'N Pak Stores, Inc., Debtors.

PAY 'N PAK STORES, INC., Plaintiff,

v.

SLIDE–CO., a corporation, Defendant.

PAY 'N PAK STORES, INC., Plaintiff,

v.

PRESTO PRODUCTS COMPANY, Defendant.

Bankruptcy No. 91–06976. Adv. Nos. A92–07264, A93–07292.

United States Bankruptcy Court, W.D. Washington, at Seattle.

May 13, 1994.

**620**

William K. Rasmussen, Davis Wright Tremaine, Seattle, WA, for Pay 'N Pak Stores, Inc., debtor in possession, in Adv. No. A92–07264.

James E. Dickmeyer, Sinsheimer & Meltzer, Inc., P.S., Seattle, WA, for Slide–Co.

Grant E. Courtney, Lane Powell Spears Lubersky, Seattle, WA, for Creditors' Committee, in Adv. No. A93–07292.

Linda Johannsen, Ater Wynne Hewitt Dodson & Skerritt, Seattle, WA, for Presto Products Co.

OPINION

THOMAS T. GLOVER, Bankruptcy Judge.

### I. Introduction.

These two cases come before the court on motions for summary judgment. At issue is the interpretation and application of 11 U.S.C. § 547(c)(4), which defines the circumstances in which a creditor may assert the "new value" defense in a preference action. The first case, *Pay 'N Pak Stores, Inc. v. Slide–Co.*, addresses the issue, as framed by the defendant and the numerous cases on which it relies, of whether or not new value "must remain unpaid." The second case, *Pay 'N Pak Stores, Inc. v. Presto Products Company,* addresses more directly the appropriate standard for determining the amount of new value that may be used to offset preferences in a running trade account.

### II. Jurisdiction.

This court has jurisdiction over these matters pursuant to 28 U.S.C. § 1334(b), inasmuch as preference matters are core proceedings under 28 U.S.C. § 157(b)(2)(F).

### III. *Pay 'N Pak v. Slide–Co.*

A. Facts.

This case comes before the court on cross-motions for summary judgment.

On August 14, 1991, debtor-in-possession Pay 'N Pak paid[1] Slide–Co. $9,296.04 and $3,103.46 for invoices dated April 9, 1991, and April 23, 1991. For purposes of its motion for summary judgment, Slide–Co. does not dispute that the payments, totaling $12,399.50, were preferences.

In April, 1991, apparently after the shipments were made, Pay 'N Pak instructed Slide–Co. that future shipments should be made through Jensen–Byrd, Inc., a distributor. Accordingly, between August 15, 1991, and September 21, 1991, the date Pay 'N Pak filed bankruptcy, Slide–Co. shipped merchandise with a value of $10,732.85 to Jensen–Byrd. Jensen–Byrd paid for those goods.

---

**1.** This is the date that the checks, dated May 20, 1991, and May 28, 1991, were honored.

Slide–Co. estimates that at most, only 2% of its sales to Jensen–Byrd were for customers other than Pay 'N Pak. Pay 'N Pak does not seriously dispute that Slide–Co. sold $10,-518.19 worth of goods to Jensen–Byrd, and that Jensen–Byrd sold those goods to Pay 'N Pak.

Slide–Co. claims that it is entitled to offset $10,518.19 (98% of $10,732.85) against the preference under 11 U.S.C. § 547(c)(4). Slide–Co. concedes that Pay 'N Pak paid Jensen–Byrd for the Slide–Co. goods that were shipped to Jensen–Byrd for further shipment to Pay 'N Pak. Jensen–Byrd paid Slide–Co. However, Slide–Co. has seized on language in cases applying Section 547(c)(4) to the effect that the "new value" furnished to the debtor need not remain unpaid in order for the defendant in a preference action to avail itself of the "new value" defense.

### B. Summary Judgment.

There is no dispute that the transfers to Slide–Co. on August 14, 1991, were preferential. For purposes of these cross-motions, there is also no dispute that:

1. Between the August 14, 1991, payments and the September 21, 1991, bankruptcy filing, Slide–Co. sold $10,-518.19 in goods to Jensen–Byrd, which goods were in turn sold to Pay 'N Pak;

2. Pay 'N Pak paid Jensen–Byrd for the goods, which payment was in turn not a preference; and

3. Jensen–Byrd paid Slide–Co. for the goods.

### C. Issue.

Slide–Co. would have the issue framed as follows: Must the "new value" remain unpaid by the debtor in order for a preference defendant to invoke the defense of Section 547(c)(4)? However, framing the issue in terms of whether the new value must "remain unpaid" may lead to a flawed analysis that sometimes produces a result comporting with the language of statute and the policy behind it—and sometimes not.

In terms of the language of 11 U.S.C. § 547(c)(4)(B), the issue is whether, "on ac-

count of" the new value, "the debtor [made] an otherwise unavoidable transfer to or for the benefit of [the] creditor." Pay 'N Pak did make such a transfer on account of the "new value" when it paid Jensen–Byrd for the Slide–Co. goods. Therefore, Slide–Co.'s defense under Section 547(c)(4) fails and Pay 'N Pak may recover the preference in its entirety.

### D. Discussion.

Section 547(c)(4) provides that a trustee[2] may not avoid a preferential transfer

[T]o or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—

(A) not secured by an otherwise unavoidable security interest; and

(B) *on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor* ...

11 U.S.C. § 547(c)(4) (emphasis supplied).

The tortuous language of Section 547(c)(4)(B) has led many courts to paraphrase the statute to the effect that the "new value" must remain unpaid. *In re Check Reporting Servs., Inc.,* 140 B.R. 425 (Bankr. W.D.Mich.1992), traces this paraphrase to *In re Bishop,* 17 B.R. 180 (Bankr.N.D.Ga.1982). The court in *Bishop* stated:

For § 547(c)(4) to apply, three requirements must be met. First, the creditor must extend new value as defined in § 547(a)(2) as "money or ... new credit" after the challenged payment.... Secondly, the new value must be unsecured. Section 547(c)(4)(A).... *Finally, the new value must go unpaid. Section 547(c)(4)(B).*

*Bishop,* 17 B.R. at 183 (emphasis supplied). The *Bishop* court's requirement that new value must go unpaid was intended to address a problem dealt with more precisely by Section 547(c)(4)(B). That is, a creditor should not be able to assert that a transfer was "new value" when the estate was otherwise depleted by the debtor's payment for

---

**2.** Pay 'N Pak, a debtor in possession, has the duties of a trustee with respect to avoiding pref-

erential transfers. 11 U.S.C. § 1107(a).

new value. *Check Reporting Servs.,* 140 B.R. at 433. That the new value "must remain unpaid" has become one of the elements of the Section 547(c)(4) defense. *See, e.g., In re Formed Tubes, Inc.,* 46 B.R. 645, 646 (Bankr. E.D.Mich.1985); *In re Keydata Corp.,* 37 B.R. 324, 328 (Bankr.D.Mass.1983); *In re Saco Local Dev. Corp.,* 30 B.R. 870, 872 (Bankr.D.Me.1983).

There is no Ninth Circuit authority addressing the issue of whether new value must remain unpaid. Most of the circuits enunciate a rule to the effect that new value must remain unpaid. *See In re Kroh Bros. Dev. Co.,* 930 F.2d 648, 652–53 (8th Cir.1991); *In re New York City Shoes, Inc.,* 880 F.2d 679, 680 (3d Cir.1989); *In re Jet Florida Sys., Inc.,* 841 F.2d 1082, 1083 (11th Cir.1988); *In re Prescott,* 805 F.2d 719, 728 (7th Cir.1986). The most recent Court of Appeals case addressing the issue, *In re Toyota of Jefferson, Inc.,* 14 F.3d 1088, 1093 n. 2 (5th Cir.1994) refers to these cases, then gives a more complete statement of the defense, including the requirement that "the new value has not been repaid with an otherwise unavoidable transfer." The court in *In re Meredith Manor, Inc.,* 902 F.2d 257, 259 (4th Cir.1990), does not address the issue, but in adopting the rule in *In re Thomas W. Garland, Inc.,* 19 B.R. 920 (Bankr.E.D.Mo.1982), the *Meredith Manor* court indicates that a debtor's transfers after a creditor's new value payments need not be tied to particular payments.[3]

The rule that the "new value must go unpaid" is the majority rule. *In re Braniff,*

*Inc.,* 154 B.R. 773, 784 (Bankr.M.D.Fla.1993). However, the "emerging trend" is to the contrary. *In re Ladera Heights Community Hosp., Inc.,* 152 B.R. 964, 968 (Bankr. C.D.Cal.1993). It is this emerging rule that Slide–Co. urges this court to adopt.

Two of the recent cases from within the Ninth Circuit adopt the rule that new value need not remain unpaid. *In re Ladera Heights Community Hosp., Inc.,* 152 B.R. 964, 968 (Bankr.C.D.Cal.1993); *In re IRFM, Inc.,* 144 B.R. 886, 892–93 (Bankr.C.D.Cal. 1992). I disagree with such a rule. In so doing, I rely primarily on the analysis of section 547(c)(4)(B) in *In re Check Reporting Servs.,* 140 B.R. 425 (Bankr.W.D.Mich.1992).[4]

Given the language of section 547(c)(4)(B), it is no wonder that courts have chosen to paraphrase it. The statute contains a double negative and the term "an otherwise unavoidable transfer." Until recently, very few courts have parsed subsection (B) of section 547(c)(4) in order to apply the actual language of the statute. The court in *Check Reporting Servs.* painstakingly did so.

As noted above, the court in *Check Reporting Servs.* traced the "rule" that new value must go unpaid to *In re Bishop,* 17 B.R. 180 (Bankr.N.D.Ga.1982). As do most of the cases addressing the "new value" defense, *Bishop* involved a running account. The new value was short-term, unsecured loans provided by creditor Trust Company Bank. The transfers from the debtor and the new value provided by the creditor were as follows:

| Date | Loan Payment | New Value |
|---|---|---|
| 9/27/79 | $18,418.50 | |
| 10/3/79 | | $ 9,140.80 |
| 10/4/79 | | $19,300.00 |
| 11/21/79 | | $10,000.00 |
| 11/28/79 | $1,828.16 (paid on account of 10/3 note) | |
| 12/4/79 | $19,800.00 (paid on account of 10/4 note) | |

**3.** *Garland* is discussed in more detail below.

**4.** Slide–Co. relies on this case as supporting its position. The courts in *Ladera Heights,* 152 B.R. at 968, and *In re IRFM, Inc.,* 144 B.R. 886, 892 n. 16 (Bankr.C.D.Cal.1992), cite *Check Reporting Servs.* for the proposition that Section 547(c)(4)(B) does not require new value to re-

main unpaid. However, the case does not stand for that proposition *per se.* What the court in *Check Reporting Servs.* did was reject the *Bishop* paraphrase of Section 547(c)(4)(B)—that new value must go unpaid—"in favor of applying the test delineated in the statute." *Check Reporting Servs.,* 140 B.R. at 432.

After the 9/27/79 preferential payment of $18,418.50, the creditor provided $38,440.80 in new value. However, since the debtor paid $21,628.16 (the 11/28/79 and 12/4/79 payments) on account of the new value, the court only allowed the Section 547(c)(4) defense to the extent of $16,812.64. *Bishop,* 17 B.R. at 183.

The court in *Check Reporting Servs.* takes issue with the *Bishop* court's limitation of the 547(c)(4) defense to $16,812.64 *on summary judgment.* A material question remained that the *Bishop* court did not address: whether the 11/28/79 and 12/4/79 transfers in *Bishop* were "otherwise unavoidable." Those payments were themselves alleged to be preferences. If, for example, those payments were made in the ordinary course of business or were otherwise not avoidable transfers, they would indeed have reduced the amount of new value that the creditor could have asserted against the 9/27/79 preference, and the result in *Bishop* is the correct one under the statute. However, the payments on 11/28/79 and 12/4/79 could themselves have been preferences to which the creditor had no defense. In that instance, the "new value" of $38,440.80 would not be reduced by the later payments totaling $21,628.16, and the creditor would have a complete defense to the 9/27/79 preferential payment under 547(c)(4).

■ This all makes sense, and comports with the policy underlying preference actions. A creditor should not be able to assert a new value defense to a preference if the transfer was paid for by the debtor. The estate was not made whole by the new value transfer. *Check Reporting Servs.,* 140 B.R. at 433. Neither should the trustee be able to assert that the new value was "paid for" if the trustee is asserting that the paying transfer was in fact a preference that the trustee can avoid. *Id.*

The court in *Check Reporting Servs.* succeeded both in making the statute make sense grammatically and in making it comport with the policies underlying preference

actions. The court rejected the argument that 547(c)(4)(B) was ambiguous and that recourse to the legislative history was warranted. The ambiguity asserted was the use of the double negative compounded by the inclusion of the word "otherwise." The court found the statute complicated, but not ambiguous, and explored the possible meanings of the statute as follows:

> Four events might occur after a creditor gives the debtor new value. The debtor might (1) make no transfer at all; (2) make an avoidable transfer; (3) make a transfer unavoidable under either § 547 or § 547(c)(4), depending upon the interpretation adopted; or (4) make an otherwise unavoidable transfer. The statute requires for the assertion of new value that the debtor "did not make an otherwise unavoidable transfer." This could be satisfied in all but one of the four circumstances outlined above. It could be satisfied if the debtor *did* make an *avoidable* transfer (possibility 2).... But it could also be satisfied if the debtor made *no transfers at all* (possibility 1) to the creditor after new value was given. If the debtor made no transfers at all after the new value was given, it is easily understood that the exception should apply. By the same token, if the transfer to the creditor after the new value was given was avoidable, the transfer was effectively the same as no transfer at all, and the creditor should still be able to get credit for the new value.

*Check Reporting Servs.,* 140 B.R. at 435 (emphasis in the original).

The court concluded that the word "otherwise" refers to transfers that are avoidable under 547(c)(4), and rejected the argument that "otherwise" refers to transfers that are avoidable under sections of the Bankruptcy Code other than section 547. This language prevents the result that transfers that are unavoidable because the creditor has a defense under 547(c)(4) could in turn be treated as unavoidable for the purposes of analyzing the "new value" defense in a series of trans-

actions.[5] While the court in *Check Reporting Servs.* concluded that recourse to the legislative history in aid of interpretation was unwarranted; it found its interpretation of the statute to be in harmony with the legislative history of Section 547 in general:

> The purpose of the preference section is two-fold. First, by permitting the trustee to avoid prebankruptcy transfers that occur within a short period before bankruptcy, creditors are discouraged from racing to the courthouse to dismember the debtor during his slide into bankruptcy. Second, and more important, the preference provisions facilitate the prime bankruptcy policy of equality of distribution among creditors of the debtor. Any creditor that received a greater payment than others of his class is required to disgorge so that all may share equally.

*Check Reporting Servs.*, 140 B.R. at 437 (quoting H.R.Rep. No. 595, 95th Cong., 1st Sess. 177 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin. pp. 5787, 6138).

The court in *In re IRFM, Inc.*, 144 B.R. 886 (Bankr.C.D.Cal.1992), relied on *In re Thomas W. Garland, Inc.*, 19 B.R. 920 (Bankr.E.D.Mo.1982), which effectively held that each preferential transfer was avoidable until exceeded by subsequent advances of new value. *See In re IRFM*, 144 B.R. at 891. The *Garland* court examined a pattern of payments and provision of new value in the form of utility services and noted:

> Each payment was followed by the extension of new credit in a sum in excess of the amount of the challenged payment, *and,* the total new value extended ($8073.73) is greater than the sum of the challenged preferential payments ($7277.48). This final criteria is not a reiteration of the net result rule, but rather, is a check necessary to assure compliance with the provisions of section 547(c)(4)(B). Each dollar of the preferential payment may be set off against each dollar of new value, but the set off may not be greater than dollar for dollar.[6]

*Garland,* 19 B.R. at 929 (emphasis in the original; footnote supplied). The court in *In re IRFM* concluded that the *Garland* interpretation best promotes the policy of encouraging creditors to do business with troubled debtors. *In re IRFM*, 144 B.R. at 891.

Where this court takes issue with *In re IRFM*, and *Garland,* upon which its reasoning is based, is their interpretation of section 547(c)(4)(B). These courts view the "otherwise unavoidable" language as an accounting safeguard. That is, if a transfer is unavoidable because of a statutory defense other than Section 547(c)(4), that transfer is not to be considered in determining the transfers subject to a Section 547(c)(4) defense. The *Garland* court removed section 547(c)(2) transfers from consideration in determining transfers subject to section 547(c)(4). It apparently did so because it viewed section 547(c)(4)(B) as requiring that no portion of the utility service provided as new value was used to offset any otherwise unavoidable transfer. *Garland,* 19 B.R. at 929. This is a misreading of section 547(c)(4)(B) that asks whether the new value is used in offsetting another preference. It asks whether the new value is used by the creditor twice, as an offset against another preference under another one of the Section 547(c) defenses, and again under Section 547(c)(4). The inquiry should be whether the new value is, in effect, offset by an otherwise unavoidable transfer from the debtor.

This misreading of the statute is carried forward in *In re IRFM*. "Thus, if a dollar of goods offsets a transfer dollar via § 547(c)(1) or (2), that same dollar of goods cannot be used again to offset a different transfer dollar via § 547(c)(4)." *In re IRFM*, 144 B.R. at 891.[7] The *IRFM* court also states:

> [Section] 547(c)(4)(B) operates as an accounting safeguard, reducing a new value

---

5. This is a simplified explanation that is illustrated by a hypothetical in *Check Reporting Servs.,* 140 B.R. at 436. That hypothetical appears in the appendix to this opinion.

6. I confess to not knowing what this last sentence means.

7. The court in *IRFM* cites *In re Check Reporting Servs., Inc.,* 140 B.R. 425, 433 (Bankr.W.D.Mich.

defense under § 547(c)(4) to the extent that the new value may have been used as a basis to otherwise offset a transfer under one of the other § 547(c) defenses. Such a use of new value under another § 547(c) defense would render the defensed transfer otherwise unavoidable.

*In re IRFM*, 144 B.R. at 893.

The court in *IRFM* has interpreted the "otherwise unavoidable" language in Section 547(c)(4)(B) as referring to transfers made *by the creditor* from whom a preference recovery is sought, when the statute plainly contemplates transfers "on account of which new value *the debtor* did not make an otherwise unavoidable transfer to or for the benefit of [the] creditor." 11 U.S.C. § 547(c)(4)(B) (emphasis supplied). The court in *IRFM* concludes that Section 547(c)(4)(B) does not require new value to remain unpaid, but acts as a safeguard against double counting. According to the *IRFM* analysis, a debtor could eliminate a Section 547(c)(4) defense by making a large preferential transfer just before filing to pay for new value. The debtor could then recover the transfer that pays for the new value under Section 547(c)(4), and the debtor would benefit twice from the transfer. This, in turn, would discourage creditors from doing business with troubled debtors. However, the debtor would not benefit twice; Section 547(c)(4)(B) prevents a debtor from using an avoidable preference paid after the creditor provided new value to reduce the amount of the new value defense.

■ If Slide–Co. were able to use the new value defense in this case, the result would be that it would be able to escape its preference liability unfairly. Slide–Co. received a preference. It furnished new value for the estate. If Pay 'N Pak had not made an otherwise unavoidable transfer for the benefit of Slide–Co., then it would make sense within the scheme of preference law that Slide–Co. could offset its preference by the new value—the bankruptcy estate would have been depleted by the amount of the preference, but replenished by the amount of the new value.

However, that is not the case. The estate was depleted by the amount of the preference. It was not replenished by the goods that Slide–Co. furnished after the preference because Pay 'N Pak paid Jensen–Byrd for those goods for the benefit of Slide–Co. If Slide–Co. were able to claim the new value as an offset to the preference, it would fare better than its fellow preference defendants: it would not have to forfeit the preference, *and* it would already have been paid for goods it furnished to debtor in the preference period, after it received the preference.

The debtor's cross-motion for summary judgment is granted.

### IV. *Pay 'N Pak v. Presto Products Company.*

#### A. Facts.

This matter comes before the court on Presto Products' motion for summary judgment.[8] Presto Products received four payments, totaling $83,795.28, that Pay 'N Pak alleges are preferential. Presto Products furnished goods totaling $95,942.14 during the preference period.[9] Presto Products depicts the pattern of Pay 'N Pak's payments and Presto Products' shipment of goods as follows:

1992) in support of its conclusion. In the language quoted, the court in *Check Reporting Servs.* was not interpreting the term "otherwise unavoidable transfer," but was alluding to the general principle that a creditor should not be able to assert a new value transfer as a preference defense if the debtor paid for the transfer, nor should the debtor be able to assert that new value was paid if the debtor is asserting *that the paying transaction was in fact a preference that the debtor can avoid.*

**8.** After this motion was argued, the parties stipulated to an order granting summary judgment to Presto Products. However, this opinion is written as though the matter were still at issue to illustrate this court's application of Section 547(c)(4).

**9.** This is the amount of its proof of claim. Presto Products actually shipped goods totaling $100,-640.62, but deducted $4,698.48 from its proof of claim for goods it sought to reclaim. Presto Products did not reclaim the goods.

| Check Date | Check Amount | Goods Shipped | Preference |
|---|---|---|---|
| 7/15/91 | $27,884.94 | | $27,884.94 |
| | | $ 9,748.91 | $18,136.03 |
| 7/26/91 | $42,276.92 | | $60,412.95 |
| | | $54,100.07 | $ 6,317.88 |
| 8/8/91 | $ 8,295.14 | | $14,613.02 |
| | | $ 950.00 | $13,663.02 |
| 8/9/91 | $ 5,338.28 | | $19,001.30 |
| | | $31,143.16 | −$12,141.86 |
| **Total** | **$83,795.28** | **$95,942.14** | **.00** |

The figures in the "Check Amount" column in some instances represent several checks. Likewise, the figures in the "Goods Shipped" column may represent several deliveries between preferential payments.

Pay 'N Pak differs somewhat in the amount of goods that Presto Products provided to Pay 'N Pak. It depicts the pattern of transfers as follows:

| Transfer Date | Pay 'N Pak's Payment to Presto | Value of Goods Transferred to Pay 'N Pak |
|---|---|---|
| 7/15/91 | $27,884.94 | |
| 7/23/91 | | $ 1,815.26 |
| 7/29/91 | $42,276.92 | |
| 7/29/81—8/8/91 | | $54,040.07 |
| 8/9/91 | $ 8,295.14 | $ 950.00 |
| 8/12/91 | $ 5,338.28 | |
| 8/12/91—9/16/91 | | $34,198.25 |
| **Total** | **$83,795.28** | **$90,703.58** |

Presto Products has received no payments on its unsecured claims.

### B. Summary Judgment.

Pay 'N Pak made four payments, presumably preferences, totaling $83,795.28. The parties are not in accord with respect to the amount of goods shipped between payments. However, Pay 'N Pak has not submitted controverting affidavits, and for purposes of this motion, the facts as pleaded by Presto Products will be accepted as true.

### C. Issues.

■ The narrow issue is whether or not new value may be offset only against the immediately preceding transfer. The broader issue is the proper formula for calculating the amount of subsequent new value that is a defense under 11 U.S.C. § 547(c)(4).

Pay 'N Pak argues that the correct rule is that set forth in *Leathers v. Prime Leather Finishes Co.*, 40 B.R. 248 (D.Me.1984). The court in *Leathers* held that the Bankruptcy Court properly applied Section 547(c)(4) by

[I]solating transfers by the debtor within the preference period on [dates omitted] and netting each against the value of shipments made by Defendant after the transfer but before the next transfer.

40 B.R. at 250. Presto Products espouses the rule in *In re Thomas W. Garland, Inc.*, 19 B.R. 920 (Bankr.E.D.Mo.1982). This is called the "modified net result rule." The

court in *In re Ladera Heights Community Hosp., Inc.,* 152 B.R. 964, 969–70 (Bankr. C.D.Cal.1993) articulates the *Garland* rule as follows:

> [T]he *Garland* subsequent advance rule provides that each preferential transfer is avoidable until exceeded by subsequent advances of new value.

152 B.R. at 969–70.

Pay 'N Pak contends that *Leathers* supplies the analysis that is dictated by the language of the statute. The argument is this: Section 547(c)(4) begins with the language:

> (4) to or for the benefit of a creditor, to the extent that, *after such transfer,* such creditor gave new value to or for the benefit of the debtor ...

(emphasis added). The word "after" has the effect of repealing the judicially created "Net Result Rule." [10] The word "such" is a restrictive modifier, which, in conjunction with "after," imposes timing restrictions on the subsequent new value exception. Pay 'N Pak argues that the use of a restrictive modifier in the third clause of Section 547(c)(4) is especially important because of the breadth of the term "transfer" as defined in the Bankruptcy Code. Rather than rely on this broad definition, Congress chose to limit that term with "such." If "such" and "after" are given their ordinary meanings, "after" prevents the carrying forward of new value and "such" further particularizes the time frame in which to determine if a creditor has provided new value. These two words thus limit the application of subsequent new value to the transfer immediately preceding the provision of new value. "Such" defines and limits "creditor" in the fourth clause of Section 547(c)(4); "such" similarly limits and defines to which transfer subsequent new value may be applied as an offset.

This argument is difficult to comprehend and is a tortured reading of simple language. There is nothing in the language of Section 547(c)(4) that limits the application of new value to the immediately preceding transfer. The *Leathers* formulation would preclude the following application of Section 547(c)(4) that is allowable under the statute:

| Date | Preference | New Value | Cumulative Preference |
|------|-----------|-----------|------------------------|
| 8/21 | $30,000 | | $30,000 |
| 8/31 | $10,000 | | $40,000 |
| 9/5 | | $20,000 | $20,000 |

This is the result dictated by the statute. After the 8/21 *and* after the 8/31 preferences, the hypothetical creditor gave new value of $20,000. The illustration assumes no further payments from debtor to or for the benefit of the creditor. Pay 'N Pak, following *Leathers,* would ask the court to allow an offset only against the last transfer, and no more than dollar for dollar, which would mean a total preference recovery of $30,000—because new value could not be offset against the first preferential transfer. However, the $20,000 new value was provided *after* the 8/21 transfer, and it was also provided *after* the 8/31 transfer. The new value was provided "after such transfer," in the words of the statute, with respect to each of the transfers. There is simply nothing in the language of Section 547(c)(4) to limit application of new value to the immediately preceding transfer.

This does not mean that *Garland* is the complete, correct rule, although its application leads to the correct result in this case. However, that would not be so in every case. The reason is that *Garland,* like *Leathers,* does not require the question, mandated by Section 547(c)(4)(B), with respect to each provision of new value, "Did the debtor make an otherwise unavoidable transfer *on account of* the new value?" Particular payments must be tied to particular invoices if we are to determine, in the language of the statute, whether, *on account of that new value,* the debtor made an otherwise unavoidable transfer to or for the benefit of such creditor.

---

**10.** If so, it is the most subtle of implied repeals, and is so subtle as to elude this court.

The chart illustrating the application of *Garland* in *In re Ladera Heights Community Hosp., Inc.,* 152 B.R. 964, 970 (Bankr. C.D.Cal.1993) illustrates the shortcoming of *Garland:* [11]

| Check Date | Check Amount | Goods Shipped | Preference |
|---|---|---|---|
| 11/15/89 | $12,318.81 | | $12,318.81 |
| | | $21,416.10* | 0.00 |
| 11/30/89 | $21,813.79 | | $21,813.79 |
| | | $ 9,752.18* | |
| 12/15/89 | $11,644.11 | | $23,705.72 |
| | | $12,190.38 | $11,515.34 |
| 12/29/89 | $21,416.10* | | $32,931.44 |
| | | $14,821.70 | $18,109.74 |
| 1/15/90 | $ 9,752.12* | | $27,861.86 |
| | | $17,529.88 | $10,331.98 |
| | | $ 748.80 | $ 9,583.18 |
| Total | $76,944.93 | $76,459.04 | $ 9,583.18 |

The figures in the "Goods Shipped" column marked with an asterisk represent shipments on account of which the creditor received preferential payments. The payments on account of those goods shipped are marked with an asterisk in the "Check Amount" column. With respect to the payments marked with an asterisk, the court in *Ladera Heights* does not pose the question, "Are the payments, which are on account of new value, otherwise unavoidable preferences?" That is, are they preferences that are unavoidable by virtue of one of the preference defenses other than section 547(c)(4)? *Garland* does not require that this question be asked, and the Court in *Ladera Heights* does not ask the question because it follows the rule that Section 547(c)(4)(B) does not require new value to remain unpaid. As discussed above in *Pay 'N Pak v. Slide–Co.,* the court in *Garland,* as well as the courts in *In re IRFM,* 144 B.R. 886, 891 (Bankr.C.D.Cal. 1992), and *Ladera Heights,* incorrectly characterize Section 547(c)(4)(B) as an accounting safeguard to prevent creditors from availing themselves of the same new value in more than one preference defense.

Referring to the table from *Ladera Heights,* we cannot tell whether or not the creditor should be able to use the new value marked with an asterisk as an offset to preceding preferential payments. We do not know, from looking at the table, whether or not the preference payments marked with an asterisk are unavoidable because of a defense other than one under Section 547(c)(4). That may be implicit in the court's analysis because the court rejected the creditor's ordinary course defense under Section 547(c)(2). It would thus appear that the result in *Ladera Heights* is correct. However, following *Garland* would not necessarily lead to the correct result, because *Garland* omits the inquiry with respect to new value required by Section 547(c)(4)(B).

■ What, then, is the proper formula for calculating new value?

1. It is no doubt useful to set out the preferential payments and the new value transfers on a grid as the parties have done.

2. New value may only be offset against preceding preferences.

3. With respect to each, individual transfer of new value, the creditor must determine whether there has been an "otherwise unavoidable transfer" on account of the new value.

a. If new value was paid for by the debtor with a payment not alleged to be a preference (and therefore not appearing in the

**11.** The format is slightly different, but the information is presented in the same order.

grid), the creditor may not avail itself of that increment of new value.

b. The creditor must also determine whether or not any of the other alleged preferences are payments on account of the new value. If they are, with respect to those payments, the creditor must determine whether or not it has grounds to allege that the preference is defensible under one of the statutory preference defenses in 11 U.S.C. § 547(c) other than 11 U.S.C. § 547(c)(4). If so, and if the creditor prevails on that defense, the new value on account of which that "otherwise unavoidable transfer" was made cannot be utilized by the creditor as a preference defense.

c. Determining whether debtor has made an otherwise unavoidable transfer on account of the new value requires matching invoice numbers to the checks that pay them. If there is no way to match payments to invoices, then the creditor must apply the generally accepted accounting principle that payments are to be applied to the oldest debt first.

· With respect to this case, I cannot rule on summary judgment because there is not enough information before me to perform the analysis and rule that, as a matter of law, defendant has a defense under 11 U.S.C. § 547(c)(4). I cannot tell from the record whether debtor made "otherwise unavoidable transfers" on account of the new value provided by Presto Products.

For the benefit of the parties before the court and other preference defendants in the Pay 'n Pak bankruptcy, I will state that it appears that it is more likely than not that the creditor has a complete preference defense. Here again is the table showing the transfers and Presto Products' calculation of the new value defense:

| Check Date | Check Amount | Goods Shipped | Preference |
|---|---|---|---|
| 7/15/91 | $27,884.94 | | $27,884.94 |
| | | $ 9,748.91 | $18,136.03 |
| 7/26/91 | $42,276.92 | | $60,412.95 |
| | | $54,100.07 | $ 6,317.88 |
| 8/8/91 | $ 8,295.14 | | $14,613.02 |
| | | $ 950.00 | $13,663.02 |
| 8/9/91 | $ 5,338.28 | | $19,001.30 |
| | | $31,143.16 | −$12,141.86 |
| | | | |
| Total | $83,795.28 | $95,942.14 | .00 |

Presto Products alleges that it has received no payments on its prepetition claim, which suggests that Pay 'N Pak did not make an otherwise unavoidable transfer on account of the new value. It appears likely from the affidavit and exhibits in support of Presto Products' motion for summary judgment that no portion of the alleged preferences was paid on account of the new value. In the Pay 'N Pak preference cases, the court has observed a pattern whereby Pay 'N Pak would date a check to correspond to the time payment on an invoice was due, but then not send the check until much later, apparently when cash flow permitted. In this case, it appears unlikely that the payments that follow the first three "clusters" of new value were on account of any of that new value. The payment of $42,276.92, dated July 26, 1991, in the table above, was actually three checks dated June 3, June 4, and June 10. The payment of $8295.14 was a check dated June 17. The payment of $5,338.28 was a check dated June 24. It is unlikely that any of these checks, all dated in June, were on account of new value, all of which was provided after July 15.

V. Conclusion.

The supposed rule that new value need not go unpaid is not a rule; it is an incomplete and inaccurate paraphrase of 11 U.S.C. § 547(c)(4)(B). The application of the new

value defense is not limited to the preference immediately preceding the provision of new value. With respect to new value, the creditor must prove that the debtor did not make an otherwise unavoidable transfer on account of that new value.

*APPENDIX*

The following hypothetical, taken from *In re Check Reporting Servs., Inc.,* 140 B.R. 425, 436 (Bankr.W.D.Mich.1992) [12], illustrates the reason for the insertion of the word "otherwise" in the statute:

| Transfer No. | Date | Alleged Preference | New Value | Preference Exposure |
|---|---|---|---|---|
| 1. | 9/1/92 | $1,000.00 | | $1,000.00 |
| 2. | 9/15/92 | | $1,000.00 | $ 0.00 |
| 3. | 10/1/92 | $1,000.00 | | $1,000.00 |
| 4. | 10/15/92 | | $1,000.00 | $ 0.00 |
| 5. | 11/1/92 | $1,000.00 | | $1,000.00 |
| 6. | 11/15/92 | | $1,000.00 | $ 0.00 |

In this hypothetical, a preference of $1,000.00 (Line 1) is received. Later, the creditor gives the debtor $1,000.00 (Line 2), on account of which the debtor makes another transfer of $1,000.00 (Line 3), which is also preferential. This transfer is not unavoidable because it is a preference (leaving aside the question of "otherwise"), so it does not diminish the new value defense. After this transfer, the creditor gives additional new value in the amount of $1,000.00 (Line 4). Another similar series of transfers occurs for like amounts between the debtor and the creditor (Lines 5 and 6). At the end of the series of transactions, the creditor has no preference liability. This makes sense; after each preference the creditor gave new value that replenished the estate for the preference. The end result of the series of transactions is that because the creditor received three transfers totaling $3,000.00 that ultimately were unavoidable, the creditor has no preference exposure.

If the word "otherwise" is disregarded, the debtor made a transfer (Line 5) on account of the new value given on 10/15/92 (Line 4), which transfer was ultimately unavoidable, and the new value must be reduced by that amount. Therefore, the creditor would have exposure of $1,000.00 for the preference of 10/1/92 (Line 3).

Working backwards, the debtor also received $1,000.00 in new value on 9/15/92 (Line 2), but on account of this transfer the debtor gave the $1,000.00 transfer on Line 3, which we originally assumed was unavoidable. Now, however, we have determined that this transfer is avoidable. Therefore, the new value given on Line 2 is not subject to a setoff for an unavoidable transfer made on account of it, and it can be used as a defense to the preference on Line 1.

If this pattern of transfers were extended further back in time, the net result would be that every other preference would be avoided. This is an unintended result that occurs solely because transactions that were unavoidable under Section 547(c)(4) were in turn treated as unavoidable for the purposes of that very section when applied to other series of transactions. To eliminate this result, the word "otherwise" was added, and refers to Section 547(c)(4) only.

■

---

**12.** The text is sometimes a quote, and sometimes a paraphrase, but for ease of reading, I have omitted the signals to the reader that indicate which is which. The reader should be assured that the court in *In re Check Reporting Servs.* did the work here.